**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

FRANCISZEK BYSTRON,                  :

     Petitioner                  :         CIVIL NO. 3:20-602

v.                                   :         (JUDGE MANNION)

ANGELA HOOVER, *et al.*,             :

     Respondents                 :

## MEMORANDUM

**I.**    **Procedural Background**

On April 10, 2020, petitioner Franciszek Bystron, a detainee for about five months of U.S. Immigration and Customs Enforcement ("ICE") at the Clinton County Correctional Facility ("CCCF"), located in McElhattan, Pennsylvania, filed, through counsel, a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and a complaint for emergency injunctive relief. (Doc. 1). Petitioner also submitted exhibits with his petition, including his Ex. 5 which consists of a letter to Congress from two medical experts for the Department of Homeland Security discussing the unique dangers COVID-19 poses to ICE detention facilities. As relief, petitioner requests the court to order his immediate release from ICE detention at CCCF while his appeal to the Board of Immigration Appeals ("BIA"), of his March 11, 2020 removal

order is pending. Petitioner alleges that his continued detention by ICE violates his due process rights under the 5th and 14th Amendments, that he is being subject to unsafe and healthy conditions at the prison due to the COVID-19 pandemic, and that he is not likely to be removed from the United States in the reasonably foreseeable future. He also alleges that his underlying health condition, namely, hypertension, "place[s] him at high risk of severe illness or death if he contracts COVID-19."

Due to the alleged emergency nature of the petition, the court issued an Order on April 10, 2020, directing counsel for the parties to confer by telephone within 72 hours and to advise the court if there was an agreed upon resolution of the petition. If there was no resolution, respondents Angela Hoover, Warden at CCCF, and Simona Flores-Lund, Field Office Director of the Philadelphia Field Office of ICE, were directed to file an expedited response to the petition. The court also directed the parties to indicate if they thought a hearing was necessary in this case. (Doc. 3). Since there was no resolution, (Doc. 4), respondents filed their response to the petition on April 16, 2020, with an attached Declaration of Joshua Reid, ICE Assistant Field Office Director with the Enforcement and Removal

Operations in the Philadelphia Field Office.[1] (Doc. 5). Petitioner filed a traverse on April 17, 2020, (Doc. 6), with his April 17, 2020 Declaration attached, (Doc. 6-1), which was signed on petitioner's behalf by Justin Burton, one of Bystron's attorneys. The Declaration regards Bystron's hypertension as well as the alleged unsafe and unsanitary conditions at CCCF which do not meet the "health procedures put in place by the CDC [with respect to COVID-19]", such as social distancing recommendations and the lack of soap and hand sanitizers in the bathroom. Significantly, Bystron's Declaration does not dispute Hoover's contention that he has not contracted the virus and Reid's averment that there are no confirmed cases of COVID-19 at CCCF. Neither party has indicated to the court that they believe a hearing is necessary in this case.

For the reasons set forth below, the court will deny petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and it will deny his complaint for emergency injunctive relief seeking his immediate release from CCCF.

---

[1]Since Hoover is the petitioner's custodian, she is the only proper respondent in this case. *See* 28 U.S.C. §2243; Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). As such, the court will hereinafter refer to respondent as "Hoover."

## II.   <u>Factual Background</u>

Petitioner, age 40, is a native and citizen of Poland. Petitioner entered the United States on June 9, 1999, as a B-2 visitor. On June 28, 2003, petitioner married a U.S. citizen and, he and his wife have two U.S. citizen children. On June 2, 2005, petitioner's status changed to a Lawful Permanent Resident. Petitioner's family resides in Park Ridge, Illinois. Also, petitioner has hypertension which is admittedly controlled by medication.

Petitioner plead guilty to bank fraud, in violation of 18 U.S.C. §1344, on September 13, 2018 in the U.S. District Court for the Northern District of Illinois, and he was sentenced to 12 months and 1 day in prison. Petitioner served approximately 11 months in prison.

After his release from prison, ICE commenced removal proceedings against Petitioner charging him as being removable under INA §237(a)(2)(A)(iii), for having been convicted of an aggravated felony involving fraud or deceit with loss to the victims in excess of $162,000. Petitioner was then taken into custody by ICE, and he has been continually detained by ICE at CCCF since December 2019.

Petitioner was ordered removed from the United States to Poland by an Immigration Judge ("IJ") on March 11, 2020. The IJ denied petitioner's

application to re-adjust his status and his request for waiver of removal based on his U.S. citizen wife and children.

On March 18, 2020, petitioner appealed his removal order to the BIA and his appeal is presently pending before the BIA. Thus, petitioner is not yet subject to a final removal order as he is still in removal proceedings.

On April 10, 2020, petitioner filed his emergency §2241 habeas petition and complaint for injunctive and declaratory relief. In his petition, petitioner alleges that based on his medical condition, "he is presently being subject to unsafe, unhealthy and hazardous detention conditions due to the coronavirus pandemic, otherwise known as 'COVID-19'", and his potential exposure to the virus at CCCF. Petitioner states that his "chronic medical condition places him at high risk of contracting COVID-19, and at imminent risk of death or serious injury if exposed." He requests immediate release alleging that his continued detention by ICE during the pendency of his removal proceedings is unconstitutional.

In addition to relying upon §2241 for relief, petitioner cites to the Declaratory Relief Act, 28 U.S.C. §2201, *et seq.*, the All Writs Act, 28 U.S.C. §1651.

Subject matter jurisdiction over this case is proper with this court under §2241 "because, at the time he filed his petition, Petitioner was detained

within its jurisdiction by a custodian within its jurisdiction." <u>Ousman v. Decker</u>, 2020 WL 1857704, *6 (D.N.J. April 13, 2020) (citations omitted). Also, the district court "may issue a writ of habeas corpus when a petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" <u>Saillant v. Hoover</u>, 2020 WL 1891854, *3 (M.D.Pa. April 16, 2020) (citing 28 U.S.C. §2241(c)(3)).

## III.   <u>Discussion</u>[2]

Initially, Hoover argues that the habeas petition should be dismissed since it challenges conditions of confinement at CCCF which are claims that must be presented in a civil rights action under 42 U.S.C. §1983. The court finds no merit to this contention.

---

[2]Since several cases in this district, as well as in many other districts, have recently detailed the backdrop of habeas cases similar to our petitioner's in which aliens seek immediate release from ICE detention due to the COVID-19 pandemic, the court sees no need to rehash this background and does not repeat this discussion herein. *See eg.*, <u>Saillant</u>, 2020 WL 1891854, *1; <u>Umarbaev v. Lowe</u>, 2020 WL 1814157, *2 (M.D.Pa. April 9, 2020). The briefs of the parties also discuss the COVID-19 pandemic. Suffice to say that this court is well-aware of the COVID-19 pandemic and its effects on the United States as well as the special considerations that must be made to protect detainees confined in detention facilities. *See also* CDC's guidelines for institutions that detain individuals, Interim Guidance on Management of Coronavirus Disease 2019 (Covid-19) in Correctional and Detention Facilities, CDC, <u>https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html</u>

The Supreme Court has held that §2241 confers jurisdiction upon the federal district courts to consider cases challenging the detention of aliens during removal proceedings. Demore v. Kim, 538 U.S. 510 (2003); Zadvydas v. Davis, 533 U.S. 678 (2001). Thus, a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, Civil No. 3:20-563, 2020 WL 1689874 (M.D.Pa. April 7, 2020), at 8 (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a

potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." *Id.* at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." *Id.* The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas petition. *See also* <u>Verma v. Doll</u>, Civil No. 4:20-14, 2020 WL 1814149 (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); <u>Saillant</u>, 2020 WL 1891854, *3 (the court agreed with the conclusions of the courts in <u>Verma</u> and <u>Camacho Lopez</u> "finding that a claim based on the COVID-19 pandemic [at CCCF] is exactly the sort of 'extreme case' contemplated in [<u>Ali v. Gibson</u>, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus."); <u>Umarbaev</u>, 2020 WL 1814157.

In the present case, as in <u>Camacho Lopez</u>, petitioner is an ICE detainee subject to a removal order, and he similarly seeks immediate release from custody at CCCF since he believes his health is in imminent

risk at the prison due to alleged unsafe and unhealthy conditions and due to his potential exposure to COVID-19, which "is unequivocally a habeas remedy." *Id.* (citation omitted). Even though petitioner Bystron has not been diagnosed with COVID-19, unlike the petitioner in Camacho Lopez, he can still proceed with his claims *via* a habeas petition. *See* Verma, 2020 WL 1814149, at *4; Saillant, 2020 WL 1891854, *3 (both Verma and Saillant cases involved petitioners who had not been diagnosed with COVID-19 and despite this fact these courts in this district found that their cases "presented the kind of extreme case in which a habeas corpus petition could be used to challenge conditions of confinement."); Umarbaev, 2020 WL 1814157, *5 (court held that "[w]hile the issue of whether Petitioner [an ICE detainee] may pursue … a claim ["that his detention violates due process because he is at heightened risk of serious illness or death should he contract the COVID-19 virus"] in a §2241 petition has not been resolved, the Court will examine his claim in the context of habeas corpus because Petitioner is seeking immediate release from confinement based upon the COVID-19 pandemic."); Singh v. Hoover, 2020 WL 1904470 (M.D.Pa. April 17, 2020) (court considered habeas petition of ICE detainee at CCCF who had not contracted the virus to the extent that it sought release from detainment based on the risks from COVID-19 and denied petition in this regard).

As such, even though petitioner Bystron does not have the COVID-19 virus and, as of April 17, 2020, there have been no confirmed cases of the virus at CCCF, this court concurs with the courts in <u>Verma</u>, <u>Saillant</u>, <u>Singh</u>, and <u>Umarbaev</u>, and finds that he can proceed with his §2241 habeas petition insofar as he seeks release from detainment at CCCF based on the COVID-19 pandemic.

Next, Hoover argues that if petitioner Bystron is allowed to proceed with his habeas petition, "[i]t is inappropriate for a court to order release as a remedy for unconstitutional conditions of confinement." She contends that the court should limit Bystron's remedy to a cure of the alleged violative conditions of confinement and/or an award of damages, i.e., limit the remedy to the nature and scope of the constitutional violation.

The court finds that it has the authority to order the release of Bystron from detainment by ICE if it finds merit to his habeas petition and request for equitable relief. *See* <u>Thakker v. Doll</u>, --- F.3d ---, 2020 WL 1671563 (M.D.Pa. March 31, 2020); <u>Saillant</u>, 2020 WL 1891854 (court found that a habeas petition was an appropriate remedy for an ICE detainee at CCCF despite the fact that the petitioner did not test positive for COVID-19); <u>Basank v. Decker</u>, —— F.Supp.3d ——, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020) (court ordered ten immigration detainees held in a county jail with confirmed cases

of COVID-19 to be released); <u>Sacal-Micha v. Longoria</u>, --- F.3d ---, 2020 WL 1518861, *3 (S.D.Tx. Mar. 27, 2020) (court held that ICE detainee filing habeas petition and seeking release from detainment due to conditions of confinement and COVID-19 virus, had authority to grant petitioner bail if "[t]he petitioner … demonstrate[s] that the habeas petition raises substantial claims and that 'extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective.'") (citation omitted).

However, the court finds that petitioner has not demonstrated a likelihood of success on the merits of his claims. In order to prevail on a motion for injunctive relief, petitioner must initially demonstrate "the two 'most critical' factors: likelihood of success on the merits and irreparable harm." <u>Camacho Lopez</u>, 2020 WL 1689874, *3 (citing <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017)). As the court in <u>Camacho Lopez</u>, <u>id.</u>, then explained:

> Under the first factor, the movant must show that "it can win on the merits." <u>Id</u>. This showing must be "significantly better than negligible but not necessarily more likely than not." <u>Id</u>. The second factor carries a slightly enhanced burden: the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. <u>Id</u>. Only if these "gateway factors" are satisfied may the court consider the third and fourth factors, which aim to balance the equities by examining the potential for harm to others if relief is granted and whether the public interest favors injunctive relief. <u>Id</u>. at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances warrant injunctive relief. <u>Id</u>. at 179.

"Irreparable harm is injury of such an irreversible character that prospective judgment would be inadequate to make the movant whole. *Id.* at *8 (citations omitted). "Mere risk of injury is not enough", and "the moving party must establish that the claimed harm is imminent and probable." *Id.* (citation omitted).

Further, "the law in the Third Circuit is clear that a civil immigration detainee is entitled to the 'same due process protections' as a pretrial detainee", and '[a]n immigration detainee can bring a claim for violation of those protections when the conditions of confinement fall below constitutional minimums." Camacho Lopez, 2020 WL 1689874, *6 (internal citations omitted). Thus, to obtain injunctive relief, "[Bystron] must demonstrate that the conditions of confinement at [C]CCF amount to 'punishment' lacking any reasonable relationship to 'a legitimate governmental objective.'" *Id.* (citation omitted).

In support of his petition and request for emergency injunctive relief in the nature immediate release from detainment at CCCF, petitioner cites to the Thakker case decided in this district as well as to various other cases decided in courts across the country that he states have found "COVID-19, coupled with the lack of hygiene and overcrowding present in detention facilities, will pose a greatly heightened risk to inmates, particularly those

with underlying medical conditions." Since petitioner cites to some of the cases in his reply brief for support, and since the court has reviewed them and is cognizant of them, the court does not repeat the cases herein. (Doc. 6 at 7-8). Suffice to say that in Thakker, "this court granted the immediate release of a group of medically vulnerable detainees in ICE custody in hopes of mitigating their risk of contracting the [COVID-19 virus]." Camacho Lopez, 2020 WL 1689874, *6. In particular, the petitioners in Thakker were ICE detainees who were not yet sick, and the court granted habeas relief finding that "their respective medical conditions placed them at risk of experiencing serious complications if they contracted the COVID-19 virus." *Id.* at n. 6. The court in Thakker, ordered "petitioners immediate release based upon: (1) their heightened vulnerability to the virus, and (2) the conditions of confinement in several ICE detention facilities, including PCCF." *Id.* (citation omitted).

In Camacho Lopez, 2020 WL 1689874, *6, the petitioner had contracted COVID-19 and the court held that "claimed deficiencies in disease *prevention* efforts [at the prison] cannot serve as a basis, in habeas, to release a detainee who has already contracted the disease." Although Bystron has not contracted the virus, similar to the petitioner in Camacho Lopez, he claims that he should be released from detainment based on

"[C]CCF's alleged inability to comply with federal guidance for preventing the spread of the COVID-19 virus within the facility." *Id.* In support of his contention, Bystron submitted his Declaration averring unsanitary and unsafe conditions in the prison based on the COVID-19 directives for prisons. Hoover has submitted Reid's Declaration indicating that CCCF has implemented procedures consistent with all of the recommendations and protocols for protecting inmates and staff from contracting COVID-19. Bystron has also submitted the letter from two doctors to DHS regarding prison conditions and safety measures in general , but it does not specifically address CCCF.

Petitioner Bystron also states that "Courts have even specifically held that COVID-19 constitutes an irreparable harm that supports the grant of a TRO." (Doc. 6 at 9) (citations omitted). Petitioner points out that there are ways in which detainees like himself can be monitored remotely if released to ensure their appearances at future removal proceedings. As such, petitioner concludes that "[b]ecause there are no legal justifications for continuing the detention of low-risk, non-violent immigrant detainees in an unhealthy or hazardous manner, and the only method to properly protect Petitioner is through release from custody." (Id.).

This court concurs with the two very recent and well-reasoned decisions by Judge Wilson of this district in the <u>Saillant</u> and <u>Singh</u> cases, which are directly on point, and she considered habeas claims by ICE detainees at CCCF seeking immediate release from confinement based on the COVID-19 pandemic. Similar to Bystron, the petitioners in <u>Saillant</u> and <u>Singh</u> did not test positive for the virus, and the court considered the fact that there were no confirmed cases of the virus in CCCF. Also, in Judge Wilson's two cases, the petitioners were relying upon alleged unsanitary and unsafe conditions at CCCF based on the CDC's guidance pertaining to COVID-19 just like Bystron.[3] Nonetheless, Judge Wilson, in <u>Saillant</u>, 2020 WL 1891854, *5, found that "CCCF has adequately addressed [petitioner's] concerns regarding CCCF's preventive measures," and that "[petitioner] is not entitled to habeas corpus relief because he has not otherwise made an individualized showing that he is entitled to such relief." (citing <u>Verma</u>, 2020 WL 1814149, at *5-7). Bystron, like Saillant, is not elderly, and although he has hypertension and alleges that his condition makes him more susceptible to complications if he does contract COVID-19, his condition is admittedly

---

[3]Since the court in <u>Saillant</u> and <u>Singh</u> discussed in detail CCCF's "significant action to prevent the spread of COVID-19 in the facility", as well as the averments in Reid's Declaration, which is essentially the same one submitted in this case, the court does not repeat them herein. *See* <u>Saillant</u>, 2020 WL 1891854, *5.

under control with medication. Further, similar to the petitioners in <u>Saillant</u>

and <u>Singh</u>, Bystron "does not allege that he has been diagnosed with

COVID-19, he does not [demonstrate] that he has any symptoms of the

disease, and he does not allege that he has been directly exposed to the

disease." *Id.* Thus, "[a]bsent any of those allegations, his claim amounts to

an argument that he is entitled to a writ of habeas corpus because he is

detained and subjected to a generalized risk of contracting COVID-19", and

"[s]uch a claim, …, is insufficient to establish entitlement to a writ of habeas

corpus." *Id.* (citing <u>Verma</u>, 2020 WL 1814149, at *5–7 (requiring a

particularized showing of the grounds for habeas corpus relief); *cf.* <u>Raia</u>, [954

F.3d 594], 2020 WL 1647922, at *2 [(3d Cir. April 2, 2020)] ("[T]he mere

existence of COVID-19 in society and the possibility that it may spread to a

particular prison alone cannot independently justify compassionate release

[under the First Step Act].")).

At bottom, the court concurs with Judge Wilson in <u>Saillant</u> and <u>Singh</u>,

and finds that since there are presently no confirmed cases at CCCF, it

appears that the prison is adequately complying with hygiene directives and

recommendations for prisons, and Bystron's speculation that sometime in

the future the prison will have confirmed cases of COVID-19 and he will be

at risk are not sufficient to show irreparable harm. As Hoover, concludes,

(Doc. 5 at 25), "Petitioner, …, cannot show Respondents are deliberately indifferent particularly where he alleges no lack of medical care in a facility with zero confirmed COVID-19 cases."

Since the first two '"most critical" factors of likelihood of success on the merits and irreparable harm have not been satisfied, the court does not address the two remaining factors. *See* Reilly, 858 F.3d at 176, 179.

In short, as the court in United States v. Gabelman, 2020 WL 1430378, at *1 (D.Nev. Mar. 23, 2020), succinctly stated: "The court acknowledges that the spread of COVID-19 may be acutely possible in the penological context, but the court cannot release every detainee at risk of catching COVID-19 because the court would be obligated to release every detainee." Thus, Bystron's complaint for emergency injunctive relief will be denied.

Next, the court considers petitioner's claim that his continued detention by ICE since December 2019 violates his constitutional due process rights alleging that there is no indication that his removal to Poland will occur in the reasonably foreseeable future. As mentioned, Bystron's removal cannot occur now since his appeal of the IJ's removal order is still pending with the BIA.

Since Bystron's has been convicted of a criminal offense subjecting him to removal and since his appeal is still pending with the BIA and his order

of removal is not yet administratively final, the authority for his mandatory detention by ICE falls under 8 U.S.C. §1226(c). *See* Davydov v. Doll, 2020 WL 969618, *2 (M.D.Pa. Feb. 28, 2020) (citations omitted). "An individual detained under §1226(c) may be released only if the Attorney General decides that release is necessary to protect a witness and that the individual is not a flight risk and does not pose a danger to society." *Id.* (citing §1226(c)(2)). As such, "section 1226(c) does not give the Attorney General any authority to release these [individuals] on bond." *Id.* (citations omitted).

The court concurs with the conclusion of the court in Davydov, 2020 WL 969618, *3, that "to the extent that the Third Circuit's holdings in Diop and Chavez-Alvarez were grounded in the canon of constitutional avoidance, those holdings do not survive the Supreme Court's decision in [Jennings v. Rodriguez, 583 U.S. ---, 138 S.Ct. 830 (2018)]." (citing Guerrero-Sanchez v. Warden York Cty. Prison, 905 F.3d 208, 222 & n.11 (3d Cir. 2018)). The Third Circuit in Borbot v. Warden Hudson County Correctional Facility, 906 F.3d 274, 278 (3d Cir. 2018), explained that "[t]he Court held in Jennings that '§1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings *only* if the alien is released for witness-protection purposes." (citation omitted) (emphasis original). However, the Third Circuit stated that "Jennings did not

call into question our constitutional holding in <u>Diop</u> that detention under

§1226(c) may violate due process if unreasonably long." *Id.* Thus, "only an

individualized as applied constitutional challenge to [§1226(c)] remains for

Petitioner and those in similar circumstances." <u>Davydov</u>, 2020 WL 969618,

*3 (citing <u>Dryden v. Green</u>, 321 F.Supp. 3d 496, 501-02 (D.N.J. 2018)).

> As the court in <u>Dryden</u>, 321 F.Supp. 3d at 502, explained:

> it is insufficient that Petitioner's detention has merely become suspect by reaching this six-month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to Petitioner, §1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief.

(citing <u>Jennings</u>, 138 S. Ct. at 846-47).

> Thus, "courts now use a case-by-case approach, post-<u>Jennings</u>, to determine whether a §2241 habeas petitioner has demonstrated that his prolonged mandatory detention under §1226(c) is unconstitutional as applied to him." *See* <u>Vega v. Doll</u>, No. 3:17-1440, 2018 WL 3756755, at *3 (M.D. Pa. Aug. 8, 2018). In making this determination, this Court has set forth the following four (4) factors to be considered: "(1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in <u>Demore</u>; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the alien and the government during the removal proceedings." *See* <u>Hernandez v. Sabol</u>, 823 F. Supp. 2d 266, 273 (M.D. Pa. 2011).

<u>Davydov</u>, 2020 WL 969618, *4.

No doubt that "[t]he 'most important' factor is the first factor, the duration of detention already experienced by the petitioner." *Id.* (citation omitted). Bystron has been detained by ICE at CCCF since December of 2019. The 5-month duration of Bystron's detention does not weigh in favor of granting him habeas relief regarding his constitutional challenge to his continued detention by ICE. *See id.* (citing Santos v. Lowe, No. 1:18-cv-1553, 2019 WL 1468313, at *3-4 (M.D. Pa. Apr. 3, 2019) (concluding that an alien who had been detained for fifteen (15) months was not entitled to a bond hearing); Crooks v. Lowe, No. 1:18-cv-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (denying a bond hearing to a petitioner who had been detained for eighteen (18) months because "his case ha[d] proceeded through the removal process at a reasonable pace and there [was] no indication on the record that the government ha[d] improperly or unreasonably delayed the proceedings"); Rosales v. Lowe, No. 1:18-cv-1302, 2018 WL 6650304, at *3 (M.D. Pa. Dec. 19, 2018) (concluding that a petitioner who had been detained for less than fifteen (15) months was not entitled to a bond hearing); Fernandez v. Lowe, No. 3:17-cv-2301, 2018 WL 3584697, at *5 (M.D. Pa. July 26, 2018) (concluding that fifteen (15)-month

detention was not unconstitutional because the alien's proceedings had "proceeded at a reasonable pace")).[4]

Regarding the second factor, the probable extent of future removal proceedings, Bystron's recent appeal to the BIA is still pending and it is not clear as to when a decision will be rendered. Further, the losing party may then file a petition for review with the Third Circuit after the BIA issues a decision. Thus, the court simply cannot determine how long future removal proceedings will take in this case but it notes that they appear to be proceeding at "a reasonable pace."

As to the third factor, i.e., the "likelihood that removal proceedings will actually result in removal", Hoover notes that "there is no question of whether [Bystron's removal] proceedings will result in removal where at least one charge of removability has already been sustained and there have not been unreasonable delays in the removal proceedings." (Doc. 5 at 51 n. 8). However, in Bystron's case, the court finds that "Respondent has not conclusively shown that Petitioner's [appeal] is so utterly frivolous or lacking

---

[4]As Hoover notes, (Doc. 5 at 51 n. 8), "[o]n November 7, 2018, this Court granted a bond hearing for a detainee who had been held pursuant to 1226(c) for fourteen months", in Bah v. Doll, Civil No. 3:18-cv-1409 (M.D. Pa. Nov. 7, 2018), however, "[t]hat decision is distinguishable from Bystron's because the length of detention at issue in Bah was almost three times the length of Bystron's."

in merit such that the Court can rely upon this factor to deny habeas corpus relief to Petitioner at this time." <u>Davydov</u>, 2020 WL 969618, *5.

As to the fourth factor, the court finds that there is no evidence that either party has acted in bad faith during the removal proceedings or intentionally caused any delay. As such, "the absence of an improper delay [in the removal proceedings] is not ultimately determinative of the instant constitutional analysis." *Id.* (citation omitted).

Hoover states that the government has a compelling interest along with the public in petitioner's continued detention pending the completion of his removal proceedings, since he has been found to be ineligible for release because he poses a danger to society based on his criminal record.

As Hoover explains, (Doc. 5 at 50), in her brief:

When an alien is detained incident to removal proceedings under 8 U.S.C. §1226(c), as Petitioner has been, those proceedings themselves supply extensive safeguards against the arbitrary deprivation of liberty. As of this filing, Petitioner has been detained for approximately 5 months. During the course of his detention, Petitioner has availed himself of those procedural safeguards. Since he was taken into custody, Petitioner has had two evidentiary hearings on his relief applications, been denied relief, and appealed that decision to the Board of Immigration Appeals.

In short, based on the stated factors, and despite the possibility of an unknown period of continued detention by ICE due to the ongoing removal proceedings, the court finds that Bystron's 5-month detention under

§1226(c), while his appeal to the BIA is pending, is not unconstitutional and does not exceed a presumptively reasonable period of detention. The court finds that based on the Supreme Court's decision in <u>Jennings</u>, in which "[t]he Supreme Court, …, has explicitly rejected the practice of reading an implicit time limit into §1226(c)", <u>Davydov</u>, 2020 WL 969618, *3, Bystron's detention by ICE for about five months is not unreasonably long under the facts of this case.[5]

Thus, Bystron's §2241 habeas petition challenging the constitutionality of his continued detention by ICE under §1226(c) while his removal proceedings are pending will be denied.

## III.   **Conclusion**

Bystron's complaint for emergency injunctive relief seeking his immediate release from CCCF will be denied. Bystron's petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 on the ground that his continued

---

[5]If Bystron's continued detention becomes prolonged and he is subject to an additional undefined period of further detention during the pendency of his removal proceedings, he can file another §2241 habeas petition to try and make a showing which would entitle him to an individualized bond hearing before an immigration judge.

detention by ICE violates his due process rights will be denied. An appropriate order shall issue.

*s/ Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 27, 2020**

20-602-01